UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KELVIN MANON, | : | |
| Plaintiff, | : | CIVIL ACTION NO.: |
| | : | |
| v. | : | 3:14-CV-1510 (VLB) |
| | : | |
| JOHNATHAN HALL, WARDEN | : | December 7, 2015 |
| AT BROOKLYN, CI, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTION TO DISMISS

Plaintiff Kelvin Manon, pro se and incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, brings this 42 U.S.C. § 1983 action against Defendants Warden Johnathon Hall, Warden Brighthaupt, Deputy Warden Corey, and Deputy Warden Jane/John Doe (collectively, "Defendants"). The complaint raises conditions-of-confinement and retaliation claims and seeks monetary, injunctive, and declaratory relief. In its initial review order, this Court dismissed all claims against Deputy Warden Corey for lack of personal involvement and all the official-capacity claims for monetary relief against the remaining defendants. Defendants now move to dismiss the remaining claims, largely relying on 28 U.S.C. § 1915(e)(2). For the following reasons, the Court DENIES the motion.

## Factual and Procedural Background

In a complaint dated August 20, 2014, Manon brings claims for unconstitutional conditions of confinement against Wardens Hall and Brighthaupt and claims for retaliation against Warden Brighthaupt and Deputy Warden

Jane/John Doe.  ECF No. 1 (Compl.).  As explained in this Court's initial review

order, Manon's complaint contains the following allegations:

> [O]n February 19, 2014, prison officials transferred [the plaintiff] to
> Brooklyn Correctional Institution. At Brooklyn, he had to sleep on the
> gym floor, and there was dust in the air and only two bathrooms for
> more than fifty inmates. The plaintiff wrote and spoke to Warden Hall
> about his concerns[,] and Warden Hall told the plaintiff [that it was a
> privilege to be at the jail and] that he would be off of the gym floor
> soon. The plaintiff remained at Brooklyn until March 14, 2014, when
> prison officials transferred him to Cheshire Correctional Institution.
>
> At Cheshire, the plaintiff had to sleep on the floor and could only use
> the bathroom once every two hours. The plaintiff wrote to Warden
> Brighthaupt on March 16, 2014 and wrote to Deputy Warden
> John/Jane Doe on March 18, 2014.  On March 26, 2014, officers
> issued the plaintiff a disciplinary report and transferred him to the
> restrictive housing unit. The plaintiff contends that prison officials
> issued him the disciplinary report because of his complaints about
> prison conditions at Cheshire.

ECF No. 6 (Order) at 2.  Manon seeks monetary, injunctive, and declaratory relief.

ECF No. 1 (Compl.) at 8 (.pdf pagination).

In March 2015, the Court conducted its initial review order pursuant to 28

U.S.C. § 1915A, ruling as follows.  *Id.*  The claims against Deputy Warden Corey

failed to state a claim because the complaint did not allege Deputy Warden

Corey's personal involvement.  *Id.* at 3.  The Eleventh Amendment barred the

official-capacity claims for monetary damages against the remaining defendants.

*Id.*  Manon stated plausible claims of unconstitutional conditions of confinement

against Hall, Brighthaupt, and Jane/John Doe.  *Id.*

Defendants now move to dismiss the complaint, largely pursuant to 28

U.S.C. § 1915(e)(2).   ECF Nos. 12 (Mot.); 12-1 (Mem.).   Defendants raise the

following six arguments.  ECF No. 12-1 (Mem.).  The claims for injunctive relief are moot because Manon was not subject to the allegedly unconstitutional conditions when he commenced the action.  *Id.* at 5–6.  Manon lacks standing because he failed to allege physical injury.  *Id.* at 6–9.  Defendants were not personally involved in the underlying allegations.  *Id.* at 9–11.  The claims are "utterly ridiculous" because "if such standard housing is adequate for our military troops, it necessarily must be more than adequate for sentenced prisoners like plaintiff."  *Id.* at 15.  Defendants are entitled to qualified immunity because "[they] would have no way of knowing that their conduct violated any clearly established rights of the plaintiff."  *Id.* at 17.  Sixth, the Eleventh Amendment bars the official-capacity claims for monetary damages.  *Id.* at 1.

## LEGAL DISCUSSION

### I.    Procedural Issues

The motion necessitates a preliminary discussion on the nuts and bolts of procedure.  Defendants largely rely on 28 U.S.C. § 1915(e)(2) as the procedural mechanism for seeking dismissal: the memorandum seeks dismissal pursuant to that statute and borrows the Rule 12(b)(6) standard for purposes of evaluating that request.  *See* ECF No. 12-1 (Mem.).  Section 1915(e)(2) is peculiar because that statute does not appear to provide litigants with a tool for seeking dismissal. Section 1915(e)(2) requires a court to review an *in forma pauperis* action *sua sponte*, does not mention an opposing party's motion to dismiss, and does not say anything about superseding the Federal Rules of Civil Procedure.  28 U.S.C.

3

§ 1915(e); *cf. Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007) ("These cases demonstrate that the sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."). This Court found few examples where another court has ruled on a party's "Section 1915(e)(2) motion," but one case that this Court did come across highlights why a party should not rely on Section 1915(e)(2) at the expense of the Federal Rules of Civil Procedure. In *Landrith v. Gariglietti*, 2012 WL 171339, at *1 (D. Kan. Jan. 19, 2012), the defendants moved to dismiss pursuant to Section 1915(e)(2) rather than Rule 12(b). To avoid the application of default judgment, the *Landrith* court construed the Section 1915(e)(2) motion as a Rule 12(b)(6) motion. *Id.* at *2. This Court will follow likewise given that the motion references Rule 12(b)(6), but other courts may not be so generous.[1] The Federal Rules of Civil Procedure contain no provision granting an extension of time to a party who files a noncognizable motion. *See* Fed. R. Civ. P. 12(a).

Construing the motion as brought pursuant to Rule 12(b)(6) creates problems of its own. Defendants' first two arguments are that Manon's claims are moot and that Manon lacks standing to bring his claims. Mootness and standing implicate the court's subject-matter jurisdiction. *Alliance for Envtl. Renewal, Inc.*

---

[1] In some ways, the Court here acts more generously than the Court in *Landrith*. Unlike the defendants in *Landrith*, Defendants did not file any motion or pleading in the time prescribed by this Court, i.e., Monday, May 15, 2015, and did not seek an extension. ECF No. 6 (Order) at 4–5. The Court, however, now extends the deadline *sua sponte*.

4

*v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) (Article III standing); *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (mootness). Federal Rule of Civil Procedure 12(b)(1) is the proper procedure vehicle for raising these challenges.   Fed. R. Civ. P. 12(b)(1).   The distinction between 12(b)(1) and 12(b)(6) matters because, *inter alia*, a dismissal for lack of subject-matter jurisdiction has no preclusive effect and permits a court to consider evidence outside the pleadings and (in some circumstances) weigh that evidence. *See, e.g., Alliance for Envtl. Renewal, Inc.*, 436 F.3d at 88 n.6.

The remaining arguments, which should have been asserted pursuant to Rule 12(b)(6), are partially redundant.   The Court already conducted its initial review pursuant to Section 1915A, the statute requiring a court to screen "a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of governmental entity" to ascertain whether the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A.  Section 1915A and Rule 12(b)(6) require the same substantive analysis. *Preston v. New York*, 223 F.Supp.2d 452, 462 (S.D.N.Y. 2002) ("[A] court evaluates whether a complaint 'fails to state a claim upon which relief may be granted' under 28 U.S.C. § 1915A under the same standard as a motion to dismiss brought under Rule 12(b)(6).").   Defendants' motion in effect seeks reconsideration of this Court's prior initial review order, but a party should pause before making such a request absent particularly compelling reasons such as "mistake, inadvertence, surprise, or excusable neglect."   Fed. R. Civ. P. 60(b)(1);

*see Olmos v. Ryan*, 2013 WL 394879, at *4 (D. Ariz. Jan. 31, 2013) ("The First Amended Complaint has already been screened pursuant to 28 U.S.C. § 1915, which uses the same standard as Federal Rule of Civil procedure 12(b)(6) . . . . Defendants do not cite sufficient grounds to reconsider." (internal citation omitted)).   Outside of the grounds identified in Rule 60(b), it would also be appropriate for a party to move for dismissal on the basis of a waivable defense because courts need not consider those defenses *sua sponte*.  *See Alvarado v. Litscher*, 2000 WL 34239113, at *2 (W.D. Wis. Oct. 16, 2000) (ruling on qualified immunity defense despite prior initial review order).   However, a party should never move to dismiss claims that have already been dismissed or seek dismissal of claims that the Court has determined to be non-frivolous solely on the basis that the moving party disagrees.

II.     Subject-Matter Jurisdiction

With these procedural observations in mind, the Court first turns to the substance of the standing and mootness arguments.  As already discussed, such arguments are properly asserted pursuant to Federal Rule of Civil Procedure 12(b)(1).  When ruling on a Rule 12(b)(1) motion, a court may consider evidence outside the pleadings.  *Dukes v. New York City Employees' Ret. Sys., & Bd. of Trustees*, 581 F. App'x 81, 82 (2d Cir. 2014) (citing *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)).  The Court may also weigh that evidence when assessing its subject-matter jurisdiction as long as the jurisdictional facts do not overlap with factual questions going to the merits.  *Alliance for Envtl. Renewal,*

6

*Inc.*, 436 F.3d at 88 & n.6.   The plaintiff bears the burden of proving standing, *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011), but "[a] party seeking to have a case dismissed as moot bears" the burden of proof, which is "a heavy burden," *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005).

### A. Defendants' "Mootness" Argument

Defendants argue that the claims for injunctive relief are moot because Manon was not subject to the allegedly unconstitutional conditions when he commenced this action.   ECF No. 12-1 (Mem.) at 5–6.   Defendants confuse standing and mootness.   Mootness concerns the timing of the dispute.   *See Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir. 1980) ("This 'time element of standing' comes under the rubric of mootness doctrine.").   In other words, "[w]hile *standing focuses on the status of the parties when an action is commenced*, the mootness doctrine requires that the plaintiffs' claims remain alive throughout the course of the proceedings." *Etuk v. Slattery,* 936 F.2d 1433, 1441 (2d Cir. 1991) (emphasis added).   Mootness does not apply here because Manon remains incarcerated in the same correctional institution as when he filed the action, i.e., no transfer occurred during the life of this litigation.   This distinction matters because, *inter alia*, the capable-of-repetition-yet-evading-review exception does not apply to standing.   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 191 (2000).   Accordingly, Defendants' argument to dismiss based on mootness is DENIED.

7

Defendants' mootness argument actually concerns standing, a question this Court must address *sua sponte*. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").  The relevant issue in this case is whether Manon has standing to enjoin and declare unconstitutional Wardens Hall's and Brighthaupt's housing policies when Manon was not subject to those policies when he commenced this action.  Article III standing requires a plaintiff to show injury-in-fact, causation, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Injury in fact requires Manon to allege the existence of "a real or immediate threat that [he] will be wronged again." *Lyons*, 461 U.S. at 111.  There are several facts demonstrating that Manon experiences a real, as opposed to a speculative, threat of again being wronged by the Wardens: (1) Connecticut inmates have no federal or state right to be incarcerated at a particular facility and thus may be transferred at any time; (2) Manon in particular has been transferred several times in a short period of time; (3) Connecticut is a small state with only a handful of prisoners and prison facilities; (4) according to Warden Hall, Manon has a "privileged" classification, limiting the number of facilities where he will be incarcerated; and (5) these conditions occurred at more than one facility.  The Court therefore rules that Manon has demonstrated, at this stage in the litigation, that he has standing to bring claims for injunctive and declaratory relief.

8

### B. Defendants' Standing Argument

Defendants explicitly raise a different standing challenge, arguing that "plaintiff has failed to allege any injury from any of the conditions which he alleges existed at Brooklyn or at Chesire.   Plaintiff doesn't even allege discomfort, let alone pain and suffering."   ECF No. 12-1 (Mem.) at 9.   This argument confuses physical injury with injury in fact.   The Constitution does not require a plaintiff to suffer a physical injury; a constitutional violation is sufficient.   *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) ("By contrast, where the right at issue is provided directly by the Constitution or federal law, a prisoner has standing to assert that right even if the denial of that right has not produced an 'actual injury.'").   Accordingly, Defendants' motion to dismiss based on standing is DENIED.

### III.   Sufficiency of the Complaint

The Court considers the remaining arguments in the context of Federal Rule of Civil Procedure 12(b)(6).   When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."   *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).   To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court affords a pro se litigant "special solicitude" by interpreting a pro se complaint "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and alterations omitted). Additionally, "[a] pro se complaint should not be dismissed without the [c]ourt's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks and alterations omitted).

### A. Personal Involvement

Defendants argue that Wardens Hall and Brighthaupt lack personal involvement because the complaint does not allege that "either Warden was aware of a serious and imminent risk to plaintiff's health or safety." ECF No. 12-1 (Mem.) at 9. This argument fails for several reasons. As Defendants correctly observe, some courts have ruled that informing a higher official of an unconstitutional act does not automatically imply personal involvement. *Rivera v. Fischer*, 655 F.Supp.2d 235, 238 (W.D.N.Y. 2009). However, Defendants fail to cite a key sentence of the *Rivera* opinion: "[t]hat does not necessarily mean, however, that a plaintiff can never establish a defendant's personal involvement based on the fact that the plaintiff wrote to that defendant about the alleged violations." *Id.* The allegations in this case make clear that the Wardens were personally involved because they responded to the complaints. *See id.* ("If, however, the official does personally look into the matters raised in the letter, or

10

otherwise acts on the prisoner's complaint or request, the official may be found to be personally involved.").   Manon alleges that Warden Hall ignored his complaints and that Warden Brighthaupt placed Manon in the restrictive housing unit in retaliation for complaining.   The complaint thus sufficiently alleges personal involvement of Wardens Hall and Brighthaupt.

The complaint plausibly suggests personal involvement for a second reason.  A prison warden is likely the most appropriate official to sue concerning the living conditions of the prisoners he is in charge of housing.  *Cf. Turkmen v. Hasty*, 789 F.3d 218, 237 (2d Cir. 2015) (recognizing *Bivens* claim for conditions of confinement against warden).   That is particularly true where, as here, the conditions are structural and reflect a specific policy decision.  As the persons in charge of managing the conditions of confinement, the Wardens would obviously be aware of those conditions and how those conditions affected their wards. Even if the evidence eventually demonstrates that Defendants are not the responsible persons, they are the appropriate parties to this action at this stage in the litigation.  *See Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ("[C]ourts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability.").  The Court therefore declines to dismiss the claims for lack of personal involvement.

11

**B. Conditions-of-Confinement Claims**

Defendants next argue that Manon's conditions-of-confinement claims are "utterly ridiculous" and that a reasonable official would have no way of knowing that their conduct violated the Constitution.  ECF No. 12-1 (Mem.) at 11–17.  The Court disagrees.  Specifically, Defendants argue that forcing inmates to sleep on the floor is perfectly acceptable.[2]  Connecticut prison officials had a reason to know that requiring inmates to sleep on the floor in the ordinary course was unconstitutional.  Over 30 years ago, the Second Circuit ruled that "forcing men to sleep on mattresses on the floors" violates the Constitution, but "[p]erhaps [may] be excused in the event of a genuine emergency situation, like a fire or riot." *Lareau v. Manson*, 651 F.2d 96, 107–08 (2d Cir. 1981).  The *Lareau* court also stated that placing as many 60 inmates in a dayroom with one correctional officer "does not comport with the duty to provide for adequate personal safety." *Id.*  As one district court explained after holding a trial on a similar issue, "[p]roviding for the housing of inmates [in large dayrooms and forcing them to sleep on the floor] threatens the physical, mental[,] and emotional health and certainly threatens their personal and property safety.  Such conditions are dehumanizing, intolerable[,] and certainly of no penological benefit." *Balla v. Bd. of Corr.*, 656 F.Supp. 1108, 1114 (D. Idaho 1987).  Manon's allegations of sleeping on a floor in a gymnasium with more than fifty inmates therefore suggests plausible Eighth

---

[2]  Despite Defendants unsupported allegations to the contrary, the complaint does not allege that Manon was provided a mattress.

Amendment claims, and the Second Circuit's prior holding would have put a reasonable official on notice that these conditions, if proven to be true, would be unconstitutional.

Manon's allegations concerning the inadequate amount of bathroom facilities and (at one point) his inability to access those facilities also states plausible Eighth Amendment claims.  Prison officials must furnish prisoners with "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and it cannot seriously be disputed that access to a functioning toilet constitutes a basic human need, *LaReau v. MacDougall,* 473 F.2d 974, 977–79 (2d Cir. 1972) (five days in small cell with only "a hole in the floor in the corner of the cell covered with a grate" constitutes a constitutional violation).  Moreover, with respect to a restrained prisoner, the Supreme Court has recognized that "a deprivation of bathroom breaks . . . created a risk of particular discomfort and humiliation."  *Hope v. Pelzer,* 536 U.S. 730, 738 (2002). A prisoner's right to adequate bathroom facilities was therefore clearly established at the time of the alleged violations. *See Masonoff v. DuBois*, 336 F.Supp.2d 54, 63 (D. Mass. 2004) ("The right to 'adequate and hygienic means to dispose of [a prisoner's] bodily wastes' was clearly established at the time of the violation, which began . . . in 1991." (alterations in the original)).

Defendants seek dismissal by way of analogy, but their analogy demonstrates why it would be inappropriate at this stage in the litigation to dismiss the claims.  Defendants argue that "men and women who serve in our

13

military forces are often housed in large, dormitory-style housing with fifty to one hundred or more soldiers, sailors, airmen[,] or marines housed . . . with only one or two bathrooms."  ECF No. 12-1 (Mem.) at 15.  Putting aside the innumerable, material differences between enlisted members of our armed services and forcibly incarcerated persons, the Court has no way of evaluating the truth of Defendants' assertion.  Aside from a few exceptions not relevant here, the Court may only consider Manon's allegations that he shared one or two bathrooms with over fifty inmates and was at one point permitted to use one only every two hours.

Relying on its experience, its common sense, and other information of which it may take judicial notice, the Court rules that these allegations state a plausible claim for the deprivation of adequate bathroom facilities and that a reasonable official, aware of his duty to furnish such facilities, would know that the alleged conditions constituted a deprivation.   Manon does not seek a personal bathroom or unrestricted access to one, yet he also does not allege that the entire prison contained a single bathroom for a hundreds of inmates or entailed patently intolerable queues.  His allegations fall somewhere in between these two extremes.  The Court lacks sufficient expertise in deprivations of the commode to engage in the requested line-drawing exercise to determine whether a ratio of one bathroom per 50 inmates or even one bathroom per 25 inmates would be constitutionally intolerable.   Without evidence from knowledgeable persons, the Court will not adopt some standard out of thin air.  Further, common

14

sense suggests that these conditions would be unacceptable: there are few situations in this society where fifty or even twenty-five people share a single bathroom for months at a time, most likely because it would be unhygienic and occasionally entail insufferable wait times. The Court is not alone in its assumption that the alleged facilities could constitute punishment. *Richardson v. Sheriff of Middlesex Cnty.*, 407 Mass. 455, 464 (1990) ("The judge's observations that in some areas there were as many as *sixty men confined with access to only two toilets* and one shower provide ample support for his conclusion that the lack of facilities in the multiple-occupancy areas rose to the level of punishment." (emphasis added)); c*f.* 29 C.F.R.1910.141 (OSHA regulation mandating that there be three toilets for every 36 to 55 employees and 4 toilets for every 56 to 80 facilities); CORE JAIL STANDARDS, American Correctional Association, *available at* http://www.bia.gov/cs/groups/public/documents/text/idc012203.pdf ("Inmates, including those in medical housing units or infirmaries, have access to showers, toilets, and washbasins with temperature controlled hot and cold running water *twenty-four hours per day*." (emphasis added)). Perhaps with some evidence the Court could confidently opine on the requisite number of toilets per inmate, but the Court cannot say as a matter of law whether these conditions caused pain and humiliation without penological justification or were simply the ordinary, less-than-ideal circumstances confronted everyday by incarcerated persons who are constitutionally entitled only to life's basic necessities. The Court DENIES Defendants' motion to dismiss for failure to state a claim and qualified immunity.

15

### C. Further Observations

The Court adds several further observations before concluding. Defendants argue that the official-capacity claims for monetary damages should be dismissed. ECF No. 12-1 (Mem.) at 1. This argument is moot because the Court has already dismissed these claims. ECF No. 6 (Order) at 3. Manon's claims for injunctive and declaratory relief are properly asserted against Defendants Warden and Hall in their official capacities, not their individual capacities. *Ziemba v. Armstrong*, 2004 WL 1737447, at *1 (D. Conn. July 30, 2004) ("Injunctive relief may only be recovered from parties in their official capacities."). Further, because the Court did not explicitly rule that the complaint stated plausible retaliation claims, it does so now. The filing of a grievance is a protected activity. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Causation can be inferred from temporal proximity. *Id.* Restrictive housing constitutes an adverse action. *See Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998) ("[P]rison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights."). Every reasonable official should know that a prisoner cannot be sent to a restrictive housing unit for complaining about allegedly unconstitutional conduct. Manon seeks only monetary damages in connection with these retaliation claims, not prospective relief (getting out of restrictive housing), and he does not allege that he is currently in restrictive housing or allege facts suggesting that he will be retaliated against again.

16

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss.  The conditions-of-confinement claims shall proceed against Wardens Hall and Brighthaupt in their individual capacities for monetary damages and against them in their official capacities for injunctive and declaratory relief.  The retaliations claims shall proceed against Warden Brighthaupt and Deputy Warden Jane/John Doe in their individual capacities for monetary damages.


IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut, December 7, 2015.